IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hashmatullah Waziry,                          :
                              Petitioner      :
                                              :
            v.                                : No. 859 C.D. 2021
                                              : Submitted: March 10, 2022
Alliance Express, LLC and                     :
Uninsured Employers' Guarantee                :
Fund (Workers' Compensation                   :
Appeal Board),                                :
                              Respondents     :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED: April 12, 2022


Hashmatullah Waziry (Claimant) petitions for review of the Workers' Compensation Appeal Board's (Board) July 6, 2021 Order that reversed a Workers' Compensation Judge's (WCJ) April 27, 2020 Decision to grant Claimant's Claim Petitions against Alliance Express, LLC (Employer) and the Uninsured Employers' Guaranty[1] Fund (UEGF). The Board determined that Pennsylvania does not have jurisdiction over Claimant's Claim Petitions. For the reasons that follow, we reverse

---

[1] The caption of this matter, as set forth in Petitioner's Petition for Review, incorrectly spells "Guaranty" as "Guarantee."

the Order of the Board and remand to the Board for consideration of Employer's and the UEGF's remaining contentions on appeal.

## I.     Background

Employer is a shipping company that operates four trucks and employs four truck drivers. Reproduced Record (R.R.) at 49a. Employer's office and truck yard are in Philadelphia, Pennsylvania. R.R. at 8a. Claimant was born in Afghanistan, where he was an interpreter for the United States Government for five years. Certified Record (C.R.) at 120. Claimant immigrated to the United States and obtained his commercial driver's license here. C.R. at 134, 172. In approximately August 2017, Claimant called Employer from his home in Texas and asked if Employer had a truck that was available to be driven. R.R. at 5a, 10a. Employer responded that it did have a truck available and inquired about Claimant's qualifications for employment. R.R. at 10a. Employer explained to Claimant the requirements of the job and how he would be paid for driving Employer's truck. R.R. at 47a.

Since Claimant lived in Texas and had no means of getting to Philadelphia, Employer brought a truck to San Antonio, Texas, and picked up Claimant. R.R. at 39a. Employer then rode with Claimant for two weeks to ensure that Claimant knew how to tie down cargo loads and obtain shipping and receiving papers. R.R. at 57a, 66a. During this time, Employer and Claimant drove from Texas to New York, from New York back to Texas, and from Texas to Philadelphia. R.R. at 59a. Claimant equally split the mileage and load compensation with Employer for these trips. R.R. at 71a. At the conclusion of these two weeks, after arriving in Philadelphia, Claimant began driving on his own. *Id.*

During his nearly four months of employment with Employer, Claimant received all driving assignments, with delivery deadlines, from Employer via phone calls or text messages that Employer sent from its office in Philadelphia. R.R. at 9a. Employer provided Claimant with the truck, chains, and tarps and paid for all gas and tolls. R.R. at 8a. Employer required Claimant to submit driving logbooks to Employer, which Employer maintained at its Philadelphia office. C.R. at 235-36. Claimant brought the truck to Philadelphia for maintenance, and he also picked up his paychecks in Philadelphia. R.R. at 24a, 30a.

Employer introduced daily driving logs for some limited periods of time[2] during Claimant's employment. C.R. at 519-46. The WCJ determined that those driving logs

> **indicate [Claimant] worked regularly out of [Employer's] Philadelphia, PA Office.** In particular, [Claimant] picked up his truck in Philadelphia, PA on September 5, 2017 and September 6, 2017 and ended his driving day in Philadelphia, PA on September 7, 2017 and September 15, 2017. He started his workday in Philadelphia, PA on September 8, 2017 and September 9, 2017. He picked up a load on Byberry Road, Philadelphia on November 8, 2017, drove to Great Bend, PA and after a delivery in Syracuse, NY, drove back to Philadelphia. On November 10, 2017, he picked up his truck in Philadelphia.

R.R. at 9a-10a (emphasis added). Although Claimant testified that he went "from east coast to west coast picking up loads and delivering the loads," R.R. at 39a, he would regularly return to Employer's Pennsylvania location after each trip.[3] *See*

---

[2] August 31, 2017 to September 14, 2017 and November 8, 2017 to November 24, 2017. C.R. at 519-46. Employer did not produce driving logs for the remainder of Claimant's employment. Claimant testified that Employer destroyed his other driving logs, because Employer was requesting Claimant to drive more hours than legally permitted. C.R. at 164-65.

[3] Claimant kept Employer's truck at his home in Texas for a week on one occasion, but this was because Employer, knowing that Claimant was obtaining a new apartment in Texas, intentionally arranged for Claimant to take a load to Texas on his way there. C.R. at 243, 394.

C.R. at 519-46.  When Claimant was asked about his contact with Employer's Pennsylvania location, the following exchange occurred:

> Q.  And when you completed the task of each assignment, where would you have to take the tractor trailer?  Back to the company [Employer]?
>
> A.  Yeah, it was whenever we coming [sic] back, we just staying [sic] like in New York.  We have their station.  We have their main office here in Philadelphia, Pennsylvania.

C.R. at 123-24.

Claimant's employment with Employer ended on December 20, 2017, when Employer dispatched Claimant to obtain a load and transport it to Oklahoma City, Oklahoma.  R.R. at 79a-80a.  While Claimant was putting a tarp on top of the load in Dover, Delaware, Claimant fell to the ground and injured his right arm.  R.R. at 8a, 40a.  Claimant received surgery on his right arm at a hospital in Delaware the following day.  C.R. at 137-38.  After the surgery, Employer transported Claimant to Employer's Philadelphia truck yard, where Claimant spent the night sleeping in his truck.  C.R. at 139-40.  Claimant then flew to Buffalo, New York, on December 22, 2017, so that he could use his health insurance for medical treatments.[4]  R.R. at 8a; C.R. at 142-43.

Unable to work as a result of the injury, Claimant filed Claim Petitions in Pennsylvania against Employer and the UEGF.  R.R. at 3a.  The WCJ held hearings on the Claim Petitions and determined that Claimant's employment was principally localized in Pennsylvania and that his contract of hire was entered in Pennsylvania.  R.R. at 9a.  Since the injury occurred in the course of employment, the WCJ granted Claimant's Claim Petitions.  R.R. at 12a-14a.

---

[4] After immigrating to the United States, Claimant received Medicare in New York state, which remained effective.  C.R. at 142-43.

4

On appeal, the Board determined that Claimant's employment was not principally localized in Pennsylvania and that his contract of hire was not entered in Pennsylvania. R.R. at 29a. Accordingly, the Board determined that Pennsylvania lacked jurisdiction over Claimant's Claim Petitions. *Id.* Due to a lack of jurisdiction over the claims, the Board reversed the WCJ's Decision and declined to address the additional issues raised by Employer and the UEGF. *Id.*

## II. Discussion

In a workers' compensation appeal, we, like the Board, are "limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). Substantial evidence is

> such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *See Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164 (Pa. Cmwlth. 2003); *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152 (Pa. Cmwlth. 1998). In performing a substantial evidence analysis, the evidence must be viewed in a light most favorable to the party that prevailed before the WCJ. *Waldameer Park, Inc.*; *Hoffmaster*. In a substantial evidence analysis where both parties present evidence, it is immaterial that there is evidence in the record supporting a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Waldameer Park, Inc.*; *Hoffmaster*.
>
> Mere speculation or conjecture is insufficient to support a factual finding, but where there exists the ability to draw reasonable and logical inferences from evidence that is presented, including testimony, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion. *See Fitzpatrick v. Natter*, 961 A.2d 1229, 1241-42 (Pa. 2008); *see also Moore v. Workmen's Comp. Appeal Bd.*, 652 A.2d 802, 806 (Pa. 1995) (referee did not engage in speculation where there was relevant supporting evidence).

5

*W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

The Workers' Compensation Act (Act)[5] authorizes Pennsylvania to exercise jurisdiction over a worker's injuries that occur outside the boundaries of Pennsylvania if, at the time of the injury "[h]is employment is principally localized in [Pennsylvania]" or "[h]e is working under a contract of hire made in [Pennsylvania] in employment not principally localized in any state." Section 305.2 of the Act, added by the Act of December 5, 1974, P.L. 782, 77 P.S. § 411.2(a)(1)-(2). Where an injury occurs outside the Commonwealth of Pennsylvania, a claimant bears the burden of proving that his employment qualifies for Pennsylvania's extraterritorial jurisdiction under 77 P.S. § 411.2(a). *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 745 (Pa. Cmwlth. 2010) (citing *Atkins v. Workmen's Comp. Appeal Bd. (Geo-Con, Inc.)*, 651 A.2d 694, 698 (Pa. Cmwlth. 1994)).

Since Claimant's injury occurred in Delaware, we begin by addressing whether Claimant's employment was principally localized in Pennsylvania. *See* 77 P.S. § 411.2(a)(1). The WCJ found that Claimant's employment was principally localized in Pennsylvania pursuant to 77 P.S. § 411.2(d)(4)(i), which states that "[a] person's employment is principally localized in [Pennsylvania] or another state when . . . his employer has a place of business in this or such other state and he regularly works at or from such place of business . . . ."

To show that an employee *regularly works at or from* an employer's place of business, he must prove that "he worked from the Pennsylvania location as a rule, not as the exception." *Atkins*, 651 A.2d at 699 (citing *Root v. Workmen's Comp.*

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

6

*Appeal Bd. (U.S. Plywood Corp.)*, 636 A.2d 1263, 1266 (Pa. Cmwlth. 1994). In *Root*, 636 A.2d 1263, an employee was injured in an automobile accident in New Jersey after attending a sales meeting at the employer's Philadelphia office. This Court held that the employee did not regularly work at or from employer's Philadelphia office, as

> [i]n this case, [the c]laimant's sales territory was limited exclusively to southern New Jersey, and she started and ended every work[]day in her home/office in New Jersey. She was required to attend only monthly sales meetings and other sporadic functions at Employer's Philadelphia office. However, because [the c]laimant was not expected to "regularly" be present in the Philadelphia office, she was provided no workspace. The WCJ correctly found these periodic contacts were not enough to establish that [the c]laimant "regularly worked at or from" [the e]mployer's Philadelphia office. In order to establish such, a claimant must prove that he or she works from the Pennsylvania location as a rule, not as the exception.

*Id.* at 1265-66.

In *Holland v. Workmen's Compensation Appeal Board (Pep Boys)*, 586 A.2d 988, 990-91 (Pa. Cmwlth. 1990), a truck driver, who began 190 of his 195 driving trips from his employer's location in New Jersey, filed a claim in Pennsylvania. He argued that he made deliveries to the employer's Pennsylvania locations and "was in Pennsylvania alone 26% of the days he worked and in Pennsylvania and other states an additional 20% of the time." *Id.* We held that the truck driver "began virtually every working day" from the New Jersey location, and that "[t]he only constant" for the truck driver was the location in New Jersey. *Id.* at 991. Accordingly, we concluded that his employment was principally localized in New Jersey. *Id.*

In *Robbins v. Workmen's Compensation Appeal Board (Mason-Dixon Line, Inc.)*, 496 A.2d 1349, 1350 (Pa. Cmwlth. 1985), a Tennessee employer hired a

Pennsylvania resident truck driver. The truck driver used the employer's Pennsylvania terminal as his "home office," regularly received his work assignments there, and "reported there whenever he did not have a load to take elsewhere." *Id.* at 1351-52. Under these facts, we determined that the truck driver's employment was principally localized in Pennsylvania, as he regularly worked from the employer's Pennsylvania location. *Id.* at 1352.

In *Hiller v. Workmen's Compensation Appeal Board (Deberardinis)*, 569 A.2d 1024, (Pa. Cmwlth. 1990), a truck driver began every one of his driving trips from Pennsylvania. In addition, he "was required to contact [the employer's] office daily and was required to forward all paper[]work to [the employer's] office in . . . Pennsylvania." *Id.* at 1027. The employer also approved all rates and mileage fees, dispatched the truck driver, and provided his paychecks. *Id.* Under these facts, we determined the truck driver regularly worked from the employer's Pennsylvania location. *Id.* at 1028.

In this matter, the WCJ's factual findings generally fit into two categories: first, that Claimant used Employer's Pennsylvania location as his home base, and second that he regularly began or ended his driving trips there. Regarding the first category, the WCJ noted that Employer provided Claimant with his paychecks at, and sent Claimant driving assignments from, Employer's Pennsylvania location. R.R. at 9a. Regarding the second category, the WCJ noted the driving logs submitted in this matter showed that Claimant's routine was to leave from or return to Employer's Pennsylvania location. R.R at 9a-10a.

Viewed in the light most favorable to Claimant, as our standard of review requires, we conclude that the driving logs submitted in this matter established that Claimant regularly began and ended his driving trips at Employer's Philadelphia,

8

Pennsylvania, location, which was the only constant location for Claimant. Although Claimant drove throughout the United States, the driving logs submitted support Claimant's testimony that he regularly returned to Employer's Pennsylvania location after completing his driving assignments. In this regard, Claimant is similar to the truck driver in *Hiller*, who began all of his driving trips at his employer's Pennsylvania location. Claimant is also similar to the truck driver in *Holland*, who began nearly all of his driving trips at his employer's location in New Jersey, which we considered to be the truck driver's only constant location. In both *Hiller* and *Holland*, we determined the truck drivers' employment was principally localized at the location where they began their driving trips.

Viewed in the light most favorable to Claimant, we further conclude that the evidence presented in this matter showed that Employer's Pennsylvania location was Claimant's home base. Employer provided Claimant with his driving assignments from Employer's Pennsylvania location. Claimant was required to submit his driving logs at Employer's Pennsylvania location, and Claimant came there to obtain his paychecks. Employer provided Claimant with the truck and all equipment, and Claimant brought the truck back to Employer's Pennsylvania location after he completed driving assignments and when the truck needed maintenance. Thus, Claimant is similar to the truck driver in *Robbins*, who used his employer's Pennsylvania location as his home base, and whose employment was determined to be principally localized in Pennsylvania.

The Board relied heavily on this Court's prior decision in *Root* to determine that Claimant did not work from Employer's Pennsylvania location as a rule. Board R.R. at 29a. Although we note that *Root* did not involve a truck driver and that Claimant had substantially more contact with Employer's Pennsylvania location

9

than the employee in *Root* did, the Board's overriding error was its failure to evaluate whether the WCJ's findings were supported by substantial evidence. Instead of doing this, the Board improperly reviewed the evidence and independently made factual findings that Claimant's contacts with Employer's Pennsylvania location were only periodic in nature. *See* R.R. at 28a-29a.

Although we agree evidence exists that would support the Board's conclusion, a reasonable mind would accept the evidence presented in this matter as adequate to show that Claimant used Employer's location as his home base and began or ended his driving trips there. Thus, the WCJ's factual findings are supported by substantial evidence. *See W. Penn Allegheny Health Sys.*, 251 A.3d at 475. In light of the WCJ's factual findings, which we accept, the WCJ's legal conclusion that Claimant's employment was principally localized in Pennsylvania pursuant to Section 305.2(a)(1) of the Act, 77 P.S. § 411.2(a)(1), was free of legal error.

Accordingly, we conclude that Pennsylvania has jurisdiction over the Claimant's Claim Petitions pursuant to Section 305.2(a)(1) of the Act, 77 P.S. § 411.2(a)(1). Since a claimant only has to prove one ground for Pennsylvania's exercise of extraterritorial jurisdiction under the Act, we need not address whether Claimant's contract of hire was made in Pennsylvania.

The Board did not address Employer's and the UEGF's additional contentions on appeal, as the Board stopped its analysis after it determined that Pennsylvania lacked jurisdiction over the Claim Petitions. Because we have determined that the Board erred in this regard, we remand to the Board for consideration of Employer's and the UEGF's additional contentions on appeal.

### III.   Conclusion

For the reasons set forth herein, we conclude that the Board erred in making

10

independent factual findings rather than analyzing whether the WCJ's factual findings were supported by substantial evidence. Substantial evidence exists to support the WCJ's factual findings, and, in light of those findings, the WCJ did not commit an error of law. Accordingly, Pennsylvania has jurisdiction over Claimant's Claim Petitions, and we reverse the Order of the Board.

Since the Board did not address Employer's or the UEGF's additional contentions on appeal, we remand to the Board for determination of those additional contentions.

_____
STACY WALLACE, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hashmatullah Waziry, :
                Petitioner :
                       :
       v. : No. 859 C.D. 2021
                       :
Alliance Express, LLC and :
Uninsured Employers' Guarantee :
Fund (Workers' Compensation :
Appeal Board), :
              Respondents :

# **O R D E R**

**AND NOW**, this 12ᵗʰ day of April 2022, the Order of the Workers' Compensation Appeal Board, dated July 6, 2021, is reversed, and the matter is remanded to the Workers' Compensation Appeal Board for consideration of Alliance Express, LLC and the Uninsured Employers' Guaranty Fund's additional contentions on appeal.

    Jurisdiction relinquished.

 

_____

STACY WALLACE, Judge